THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
Heather Hamel (Ariz. Bar No. 031734)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
benedetto@the-plf.com
hamel@the-plf.com

*Firm email for docketing purposes:*
admin@the-plf.com

*Attorneys for Plaintiff Ivaughn Oakry*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Ivaughn Oakry, an unmarried man, on his behalf and on behalf of his three minor children[1], | Case No. 2:20-cv-01167-JAT-DMF |
| Plaintiff, | **FIRST AMENDED COMPLAINT** |
| v. | (Jury Trial Demanded) |
| City of Tempe, an Arizona municipal corporation; | |
| Ronald Kerzaya, in his individual capacity; | |
| David Hanson, in his individual capacity; | |
| Amy Pfeifer, in her individual capacity; | |
| Defendants. | |

For his Complaint against Defendants City of Tempe, Ronald Kerzaya, David

---

[1] Mr. Oakry's three, minor children, in order to protect their identities, will be identified using their first initials, which are B. Oakry, K. Oakry, and M. Oakry. They will be referred to throughout this document using their age at the time of the complained-of events, which was nine-years-old, six-years-old, and one-year-old, respectively.

Hanson, and Amy Pfeifer, Plaintiff Ivaughn Oakry, on his own behalf and on behalf of his three minor children, hereby alleges as follows:

## **PRELIMINARY STATEMENT**

1. On the morning of June 15, 2019, Tempe Police Officer Ronald Kerzaya entered the home of Plaintiff Ivaughn Oakry without a warrant, drew his TASER, and pointed it at Mr. Oakry in front of his three minor children until back-up officers arrived. When Mr. Oakry exercised his constitutional right to demand the officers leave his home, three officers simultaneously fired their TASER guns at Mr. Oakry while he was holding his 1-year-old son in his arms. They then tased him two more times, each, while he was lying on the ground.

2. This Complaint seeks relief from the defendants under 42 U.S.C. § 1983 and Arizona law for their violations of the Plaintiff's basic constitutional and common-law rights and the harm that has been visited upon this family as a direct and proximate result.

## **PARTIES**

3. Plaintiff Ivaughn Oakry is a single man residing in Maricopa County, Arizona. He brings this action both on his own behalf and on behalf of his three minor children who, at the time of the complained-of events were 9-years-old, 6-years-old, and 1-year-old.

4. Defendant Ronald Kerzaya is a police officer with the City of Tempe Police Department who, upon information and belief, resides in Maricopa County, Arizona. At all times relevant to the complaint, Defendant Kerzaya was acting under the color of law, in furtherance of the interests of the City of Tempe, and within the course and scope of his employment. He is being sued in his individual capacity.

5. Defendant David Hanson is a police officer with the City of Tempe Police Department who, upon information and belief, resides in Maricopa County, Arizona. At all times relevant to the complaint, Defendant Hanson was acting under the color of law, in

furtherance of the interests of the City of Tempe, and within the course and scope of his employment. He is being sued in his individual capacity.

6. Defendant Amy Pfeifer is a police officer with the City of Tempe Police Department who, upon information and belief, resides in Maricopa County, Arizona. At all times relevant to the complaint, Defendant Pfeifer was acting under the color of law, in furtherance of the interests of the City of Tempe, and within the course and scope of her employment. She is being sued in his individual capacity.

7. Defendant City of Tempe (the "City") is a municipal corporation created under the laws of the State of Arizona. The City maintains and operates a law enforcement agency known as the City of Tempe Police Department. The City is under a duty to run its law enforcement activities in a lawful manner to preserve the peace and to preserve for its citizens the rights, privileges, and immunities guaranteed and secured to them by the Constitutions and laws of the United States and the State of Arizona.

8. The City has established or delegated to its law enforcement agency the responsibility for establishing and implementing policies, practices, procedures and/or customs used by law enforcement officers employed by the City regarding the investigation, detention, arrest, and public relations during law enforcement operations.

9. Every act and omission of the employees, representatives, and agents of the Defendants detailed in this Complaint was performed under the color and pretense of the Constitutions, statutes, ordinances, regulations, customs, and uses of the United States of America, the State of Arizona, and the City of Tempe, by their authority as sworn officers, and within the course and scope of their employment.

## **JURISDICTION, AND VENUE**

10. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a)(3)(4) and 1367(a). This Court has jurisdiction over Plaintiff's claims for violation of their civil rights under 42 U.S.C. § 1983 and pendent jurisdiction over his state law claims pursuant to 28 U.S.C. §

1367(a).

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District within one year of the filing of the original Complaint, and this Court otherwise has jurisdiction.

12. This case presents an actual case in controversy arising under the Fourth, and Fourteenth Amendments to the United States Constitution, and under the provisions of 42 U.S.C. §§ 1983 and 1988.

### **GENERAL ALLEGATIONS**

#### The Illegal Entry

13. On the morning of June 15, 2019, multiple Tempe police officers responded to a domestic disturbance call at an apartment complex.

14. Upon information and belief, the woman who initiated the call (referred to generically as the "caller" out of respect for her privacy) was the mother of Ivaughn Oakry's three minor children.

15. She confirmed that there were no drugs or weapons in the third-floor apartment. She informed the dispatcher that Mr. Oakry had the couple's three children in the apartment. She then informed the dispatcher that she was outside the apartment, where she would wait for police to arrive.

16. The dispatcher advised her that she was sending two officers to the home, and the caller advised that she "just [didn't] want her kids to be impacted."

#### Initial Contact and Illegal Entry into Mr. Oakry's home

17. Officer Kerzaya was the first officer to arrive on the scene.

18. Instead of approaching or interviewing the woman who initiated the call (who was still on the phone with 911 dispatcher), or waiting for the other officer to arrive, Officer Kerzaya proceeded directly to the door of Mr. Oakry's residence.

19. When Mr. Oakry opened his door, Officer Kerzaya asked "hey, what's

happening man?"

20. After Mr. Oakry answered "nothing," and instructed Office Kerzaya "this is my house," Officer Kerzaya responded "I don't care if it's your house or not, put your hands behind your back" and moved quickly at Mr. Oakry who was standing inside his home.

21. Less than 8 seconds after asking Mr. Oakry "hey, what's happening man?" Officer Kerzaya instructed Mr. Oakry to put his hands behind his back and entered his home.

### Escalation of Force

22. As Mr. Oakry backpedaled into his living room, he expressly objected to Officer Kerzaya's entry into his home without his permission, telling the officer he was "not allowed in here."

23. With Mr. Oakry's 9-year-old son and 6-year-old daughter sitting on the sofa, mere feet away, Officer Kerzaya yelled at Mr. Oakry, "put your fucking hands behind your back!"

24. Mr. Oakry began raising his arms in a classic "surrender" position. Before he could do so, however. Officer Kerzaya escalated the use of force by drawing his TASER and pointing it at Mr. Oakry's chest.

25. Mr. Oakry again informed Officer Kerzaya that he had not given the officer permission to enter, and voiced his objection to his children witnessing this show of excessive force inside their own home. Officer Kerzaya continued to hold Mr. Oakry at TASER-point and repeated his demands that Mr. Oakry put his hands on his head.

26. As the two men went back-and-forth, Mr. Oakry's 1-year-old son ran to him and tugged at his shorts. Mr. Oakry instinctively picked his son up and attempted to comfort him while continuing to demand that Officer Kerzaya leave his home.

27. Officer Kerzaya responded by increasing his volume, yelling louder at Mr. Oakry to "put the baby down and put your hands on top of your head!" Mr. Oakry

responded by turning his body to shield his baby and demanding that Officer Kerzaya cease his show of force.

### Additional Officers Arrive on the Scene

28. Shortly thereafter, three more Tempe Police officers – Tempe Police Officers Fernandez, Hanson, and Pfeifer – then arrived and entered the apartment.

29. Officer Fernandez ushered the two older children, who were still crying and yelling, to the second-story patio, shutting the patio door behind them and locking them out of the apartment.

30. Officers Kerzaya, Hanson, and Pfeifer then drew their TASER guns and began circling around Mr. Oakry.

31. As the officers circled, Mr. Oakry continued to backpedal, navigating boxes on the floor and a pile of laundry until he was forced into the corner of the room.

32. The woman who initiated the call, entered the doorway, saw what was happening and yelled at the officers "He didn't do anything!"

### Defendants Shoot Mr. Oakry With Their Tasers

33. With Mr. Oakry surrounded while still holding his baby, Officer Kerzaya instructed his fellow officers "Shoot him low!"

34. Mr. Oakry continued to plead for the officers not to shoot him, until Officer Kerzaya yelled out his commands to his fellow officers to "do it."

35. Officers Kerzaya, Hanson, and Pfeifer then all simultaneously fired their TASER guns at Mr. Oakry. The TASERs worked as designed, causing Mr. Oakry to seize up and fall motionless to the ground. As Mr. Oakry fell he was able to turn his body just enough to avoid landing on top of his baby.

36. The officers quickly moved in, rolling Mr. Oakry's immobilized, 200-pound body away from his son.

37. With the baby free, the officers then TASED Mr. Oakry a second time, and a

third time.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983 – Unlawful Entry in Violation of 4th Amendment to the United States Constitution**
*(Against Officer Kerzaya Only)*

38. Plaintiff incorporates by reference all allegations asserted in the paragraphs above as though they were fully set forth herein.

39. 42 U.S.C. § 1983 provides, in relevant part, as follows:

> Every person, who under the color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress. . .

40. Plaintiff Ivaughn Oakry is a citizen of the United States, and Officer Kerzaya is a "person[s]" for the purposes of 42 U.S.C. § 1983.

41. Officer Kerzaya was, at all times relevant hereto, acting under the color of law, in his capacity as a City of Tempe police officer.

42. At the time of the above-mentioned, complained-of events, the Fourth Amendment to the United States Constitution clearly established Mr. Oakry's right to be secure in his property from unlawful entry and search.

43. Officer Kerzaya violated this right when he entered Mr. Oakry's apartment without his permission, without a warrant, and without exigent circumstances as defined by law.

44. Officer Kerzaya engaged in the above-described conduct willfully, maliciously, in bad faith, and in reckless disregard of Mr. Oakry's federally protected constitutional rights.

45. The acts and omissions of Officer Kerzaya intentionally deprived Mr. Oakry

of his constitutional and statutory rights and caused him other damages.

46. Officer Kerzaya is not entitled to qualified immunity for the complained-of unconstitutional and illegal conduct.

47. As a proximate result of Officer Kerzaya's unlawful conduct, Mr. Oakry suffered actual injuries and other damages and losses as described herein, entitling him to damages in amounts to be determined at trial.

48. Mr. Oakry is further entitled to attorneys' fees and costs under 42 U.S.C. § 1988, pre-judgment interest and costs allowable by federal law.

49. In addition to compensatory, economic, consequential, and special damages, Mr. Oakry is entitled to punitive damages against Office Kerzaya under 42 U.S.C. § 1983, because Officer Kerzaya's actions were taken maliciously, willfully, or with reckless or wanton disregard of Mr. Oakry's constitutional rights.

## SECOND CLAIM FOR RELIEF
**42 U.S.C. § 1983—Excessive Force in Violation of the Fourth Amendment**
*(Against Defendants Kerzaya, Hanson, and Pfeifer only)*

50. Plaintiff incorporates by reference all allegations asserted in the paragraphs above as though they were fully set forth herein.

51. 42 U.S.C. § 1983 provides, in relevant part, as follows:

> Every person, who under the color of any statute, ordinance, regulation, custom or usage of any state or territory of the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress. . .

52. Plaintiff Ivaughn Oakry and his 1-year-old son are citizens of the United States, and Officers Kerzaya, Hanson, and Pfiefer are "person[s]" for the purposes of 42 U.S.C. § 1983.

53. Officers Kerzaya, Fernandez, Hanson, and Pfeifer were, at all times relevant hereto, acting under the color of law, in their capacities as City of Tempe police officers.

54. At the time of the above-mentioned, complained-of events, the Fourth Amendment to the United States Constitution clearly established Mr. Oakry's and his son's right to be secure in their persons from unreasonable seizure through excessive force.

55. Officers Kerzaya, Hanson, and Pfeifer violated these rights when held Mr. Oakry and his 1-year old son at TASER gun-point.

56. Officers Kerzaya, Hanson, and Pfeifer violated these rights when they shot Mr. Oakry, who posed no threat to Defendants or anyone else at the time, with their Taser guns while he was in his own home, holding his 1-year-old son.

57. Officers Kerzya, Hanson, and Pfeifer then violated these rights again when the shot Mr. Oakry with their Taser guns numerous additional times while he lay helpless on the ground.

58. Offices Kerzaya, Hanson, and Pfeifer engaged in the above-described conduct willfully, maliciously, in bad faith, and in reckless disregard of Mr. Oakry's and his son's federally protected constitutional rights.

59. The acts and omissions of Officers Kerzaya, Hanson, and Pfeifer as described herein intentionally deprived Mr. Oakry and his 1-year old son of their constitutional and statutory rights and caused them other damages.

60. Officers Kerzaya, Hanson, and Pfeifer are not entitled to qualified immunity for the complained-of unconstitutional and illegal conduct.

61. As a proximate result of Offices Kerzaya's, Hanson's, and Pfeifer's unlawful conduct, Mr. Oakry and his son suffered actual injuries and other damages and losses as described herein, entitling him to damages in amounts to be determined at trial.

62. Mr. Oakry and his son are further entitled to attorneys' fees and costs under 42 U.S.C. § 1988, pre-judgment interest and costs allowable by federal law.

63. In addition to compensatory, economic, consequential, and special damages, Mr. Oakry and his son are entitled to punitive damages against Officers Kerzaya, Hanson, and Pfeifer under 42 U.S.C. § 1983, because the actions of these offices were taken maliciously, willfully, or with reckless or wanton disregard of Mr. Oakry's and his 1-year-old son's constitutional rights.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. § 1983 - Municipal Liability under *Monell***
*(Against the City of Tempe Only)*

64. Plaintiff incorporates all allegations contained in the foregoing paragraphs as if they were full set forth herein.

65. Municipal bodies are liable for constitutional violations under 42 U.S.C. § 1983 when execution of its official policy or custom deprives an individual of its rights protected by the Constitution.

66. Such municipal liability exists when a city fails to properly train, supervise, or discipline its employees, amounting to a deliberate indifference to a plaintiff's constitutional rights, or when the municipality ratifies unconstitutional conduct.

<u>Ratification and Failure to Discipline</u>

67. Upon information and belief, immediately after Officers Kerzaya, Hanson, and Pfeifer TASED Ivaughn Oakry and his 1-year-old son, the Tempe Police Department's executive leadership reviewed these officers' use of force and determined that such unconstitutional force was within Tempe PD "policy."

68. This was confirmed on November 5, 2019, when Tempe Police Department's Chief of Police, Sylvia Moir held a press conference addressing the TASING of Ivaughn Oakry in his own home.

69. At this press conference, Chief Moir stated that she and the Department had reviewed Officer Kerzaya's, Hanson's, and Pfeifer's TASING of Ivaughn Oakry and

"determined that no policy violations had occurred." She also remarked that anyone questioning the necessity of this force was "irresponsible."[2]

70. These public remarks, provided by the Chief Official within the Tempe Police Department, served as a ratification of Officer Kerzaya's, Hanson's, and Pfeifer's unconstitutional conduct, a point cemented by the Tempe Police Department's failure to discipline any of the involved officers for their violations of Mr. Oakry's constitutional rights.

<u>Failure to Properly Train and Supervise</u>

71. At all times relevant hereto, Defendant City of Tempe had a constitutional duty to properly train, supervise, and discipline their employees and agents.

72. Upon information and belief, Defendant City of Tempe breached that duty by failing to adequately train any of these officers on proper and appropriate de-escalation tactics, or to equip these officers with basic training, strategy, and tactics to gain the compliance of a subject without resorting to an unconstitutional use of physical force.

73. Indeed, rather than providing proper de-escalation and use of force trainings to Officers Kerzaya, Hanson, and Pfeifer, it is believed that Defendant City of Tempe used a hyper-aggressive "kill or be killed" warrior-inspired program to teach these officers to use force liberally, unconstitutionally, and as a first resort. This has created a culture of violence within the Department, resulting in the unconstitutional TASING of Ivaughn Oakry.

74. The inadequacy of Defendant City of Tempe's training and supervision of the involved officers is evident not only in their unconstitutional conduct in the present matter, but in Officer Kerzaya's most recent unconstitutional act.

75. On or about August 29, 2020, Officer Kerzaya unconstitutionally held a black

---

[2] *See* https://ktar.com/story/2832010/activists-call-for-firings-after-tempe-police-use-taser-on-man-holding-baby/.

man at gunpoint while responding to a call at a hotel to remove a white trespasser.[3] This act was reminiscent of Kerzaya's unconstitutional show of force against Oakry, and importantly, came after the Department required that he undergo additional de-escalation and use of force trainings.

76. The policies, patterns, practices, and/or customs of condoned misconduct, as set forth above, were tacitly or overtly sanctioned, as evidenced by the conduct of the officers, Chief Moir's words, and the City of Tempe's failure to properly train or supervise, meaningfully investigate, and/or appropriately discipline any of the defendants involved in this incident, which amounted to a deliberate indifference to Plaintiffs' constitutional rights.

77. This unconstitutional behavior was carried out pursuant to a policy, pattern or practice, or custom, whether formal or informal, which violates the constitutional rights of the Mr. Oakry and others in Mr. Oakry's situation.

78. The condoning of the misconduct, and failure to end these policies, patterns, practices, or customs, was a direct and proximate cause of injuries suffered by Mr. Oakry and his 1-year-old son.

**FOURTH CLAIM FOR RELIEF**
**Assault and Battery Under Arizona Law**
(***Against Defendants Kerzaya, Hanson, Pfeifer, and the City of Tempe***)

79. Plaintiff Ivaughn Oakry and his 1-year-old son hereby incorporates all allegations contained in the foregoing paragraphs as if they were full set forth herein.

80. As set forth herein, Officers Kerzaya, Hanson, and Pfeifer placed Mr. Oakry and his 1-year-old son in apprehension of immediate harmful of offensive contact when they pointed their TASER guns at them.

81. As set forth herein, Officers Kerzaya, Hanson, and Pfeifer caused harmful or offensive contact with Mr. Oakry and his 1-year-old son when they shot their TASER guns

---

[3] *See* https://www.azcentral.com/story/news/local/tempe/2020/09/03/tempe-officer-again-accused-use-force-against-unarmed-black-man/5682571002/.

at them and shot Mr. Oakry.

82. As a direct and proximate cause of Offices Kerzaya's, Hanson's, and Pfeifer's harmful and offensive contact, Mr. Oakry and his 1-year-old son suffered injuries and damages in an amount to be proven at trial.

83. Officers Kerzaya and Hanson are directly and individually liable for the foregoing assaults and batteries.

84. Officers Kerzaya, Hanson, and Pfeifer were all acting within the course and scope of their respective employment as police officers for the City of Tempe when they made contact with Mr. Oakry and his 1-year-old son: They were on duty; working in their regular job capacities; working in the time, place, and manner authorized by the City of Tempe; and their actions were motivated, at least in part, by a purpose to serve the City of Tempe.

85. Because the Officers were acting within the course and scope of their employment for the City of Tempe, Defendant City of Tempe is vicariously liable for the damages caused by their tortious conduct.

**FIFTH CLAIM FOR RELIEF**
**Intentional Infliction of Emotional Distress Under Arizona Law**
*(Against Defendants Kerzaya, Hanson, Pfeifer, and the City of Tempe)*

86. Plaintiff Ivaughn Oakry and all three of his three minor children hereby incorporate by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

87. The above-described actions of the officers – unconstitutionally entering Mr. Oakry's home, holding Mr. Oakry and his 1-year-old son at TASER gunpoint in front of his other two minor children, causing his minor children to believe they were being held at TASER gunpoint too, shooting Mr. Oakry with their TASER guns in his own home while he was holding his 1-year-old son, causing him to almost fall on his 1-year-old son, and

shooting him with their TASER guns again while he lay helpless on the ground – were extreme and outrageous.

88. An average member of the community would regard the conduct referenced in the foregoing paragraph as atrocious, intolerable in a civilized community, and beyond all possible bounds of human decency.

89. The above-described conduct of these officers was intentional insofar as they intended to cause Mr. Oakry and his three minor children emotional distress.

90. The above-described conduct of these officers was reckless because they were aware of and consciously disregarded the near certainty that it would cause Mr. Oakry and his three minor children emotional distress.

91. The above-described conduct of these officers caused Mr. Oakry and his three minor children to suffer emotional distress.

92. As a direct and proximate result of the actions of these officers, Mr. Oakry and his three minor children were injured and suffered damages in an amount to be proven at trial.

93. Officers Kerzaya and Hanson are directly and individually liable for the foregoing intentional infliction of emotional distress.

94. Officers Kerzaya, Hanson, and Pfiefer were acting within the course and scope of their respective employment as police officers for the City of Tempe during the sum of their involvement in this matter. All officers were performing acts they were authorized to perform; were on-duty, working in their regular job capacity; and their actions were motivated, at least in part, by a purpose to serve the City of Tempe.

95. Because these officers were acting within the course and scope of their employment for the City of Tempe, Defendant City of Tempe is vicariously liable for the damages caused by these employees' tortious conduct.

///

## SIXTH CLAIM FOR RELIEF
### Gross Negligence Under Arizona Law
*(Against Defendants Kerzaya, Hanson, Pfeifer, and the City of Tempe)*

96. Plaintiff Ivaughn Oakry hereby incorporates by reference the allegations contained in the foregoing paragraphs as if they were fully set forth herein.

97. Defendants owed Plaintiff and his three minor children the duty to not act with reckless indifference to their rights and safety.

98. The above-described conduct of Defendants breached these duties, causing Plaintiff and his three minor children to suffer damages in an amount to be proven at trial.

99. Because these officers were acting within the course and scope of their employment for the City of Tempe, Defendant City of Tempe is vicariously liable for the damages caused by these employees' gross negligence.

100. Further, insofar as the City of Tempe itself was grossly negligent in his hiring, supervision, or training of any employees involved in this incident, it is directly liable to Plaintiff and his three minor children for these separate acts of gross negligence. As a direct and proximate result of the City of Tempe's gross negligence, Plaintiff and his three minor children were injured and suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ivaughn Oakry, on his own behalf and on behalf of his three minor children, hereby requests that the Court enter judgment against Defendants and issue an award in Plaintiffs' favor as follows:

    a. For damages in an amount appropriate to compensate Mr. Oakry and his 1-year old son fairly and fully for the violations of their Constitutional Rights;

    b. For general and special damages, including but not limited to the medical expenses, lost wages and earning capacity, pain and suffering, mental anguish, emotional suffering, and loss of enjoyment of life suffered by Plaintiff and his three minor children, arising both out the violations of both

their constitutional rights and the officers' tortious conduct;

c. For punitive damages under 42 U.S.C. § 1983 and as provided for by Arizona law;

d. For nominal damages as provided for by law;

e. For prejudgment interest on all liquidated sums;

f. For attorneys' fees under 42 U.S.C. §§ 1983 and 1988, and as provided for by Arizona law;

g. For Plaintiffs' costs and other expenses incurred in this action; and

h. Such other and further relief as the Court deems just.

DATED this 6th day of October, 2020.

        THE PEOPLE'S LAW FIRM, PLC
        645 North 4th Avenue, Suite A
        Phoenix, AZ  85003

        By: /s/ Stephen D. Benedetto
            Stephen Benedetto
            Heather Hamel

*Attorneys for Plaintiff Ivaughn Oakry and his minor children*