WO                                                                                                               SH

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ivaughn Oakry, | No. CV 20-01167-PHX-JAT (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Tempe, City of, et al., | |
| Defendants. | |

Plaintiff Ivaughn Oakry, who is represented by counsel, brought this civil rights action pursuant to 42 U.S.C. § 1983 and Arizona law. Defendant City of Tempe ("the City") has filed a Motion to Dismiss Count 3 of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and Plaintiff opposes the Motion. (Docs. 52, 57.)[1]  The Court will deny the Motion.

**I.     Background**

In his Second Amended Complaint, Plaintiff sues the City and Tempe Police Department (TPD) Officers Ronald Kerzaya, David Hanson, and Amy Pfeifer. (Doc. 45.) Plaintiff alleges that on the morning of June 15, 2019, multiple TPD officers responded to a domestic disturbance call at an apartment complex initiated by the mother of Plaintiff's three minor children. (*Id.* ¶¶ 13, 14.) She confirmed that there were no drugs or weapons in the third-floor apartment and that Plaintiff had the couple's three children in the

---

[1] Defendants' Motion for Summary Judgment (Doc. 71) and Motion to Exclude (Doc. 73) will be addressed in a separate Order.

apartment. (*Id.* ¶ 15.) She informed the dispatcher that she would wait outside the apartment for police to arrive. (*Id.*)

Defendant Kerzaya arrived at the scene first and went to Plaintiff's door. (*Id.* ¶¶ 17, 18.) When Plaintiff opened the door, Kerzaya asked Plaintiff what was going on, and Plaintiff responded, "nothing" and "this is my house." (*Id.* ¶¶ 19, 20.) Kerzaya replied, "I don't care if it's your house or not, put your hands behind your back," and Kerzaya moved into the apartment, less than 8 seconds after asking Plaintiff what was going on. (*Id.* ¶¶ 20, 21.) Plaintiff told Kerzaya that he "was not allowed" to come into the apartment, and Kerzaya told Plaintiff to "put [his] fucking hands behind [his] back!" (*Id.* ¶¶ 22, 23.) Plaintiff began to raise his arms in a "surrender" position, and Kerzaya pointed his taser at Plaintiff. (*Id.* ¶ 24.) Plaintiff told Kerzaya that he had not given the officer permission to enter, and voiced his objection to his children witnessing this show of excessive force inside their own home, but Kerzaya continued to hold Plaintiff at taser-point and repeated his demands that Plaintiff put his hands on his head. (*Id.* ¶ 25.) At some point, Plaintiff's 1-year-old son ran into the room and tugged at Plaintiff's shorts, and Plaintiff picked him up. (*Id.* ¶ 26.) Kerzaya yelled, "put the baby down and put your hands on top of your head!" and Plaintiff turned his body to shield his son. (*Id.* ¶ 27.)

Soon thereafter, TPD Officer Fernandez and Defendants Hanson and Pfeifer arrived and entered the apartment. (*Id.* ¶ 28.) Fernandez escorted the other two children out of the apartment, and Kerzaya, Pfeifer, and Hanson kept their tasers pointed at Plaintiff, who was still holding his son. (*Id.* ¶¶ 29, 30, 33.) Kerzaya instructed the other officers to "Shoot him low!" while Plaintiff pleaded for the officers not to shoot him, and Defendants Kerzaya, Hanson, and Pfeifer simultaneously fired their tasers at Plaintiff. (*Id.* ¶¶ 33–35.) Plaintiff fell to the ground and was able to avoid landing on top of his son. (*Id.* ¶ 35.) The officers moved Plaintiff away from his son and then tased Plaintiff two more times. (*Id.* ¶¶ 36, 37.)

After Plaintiff's arrest, the TPD's executive leadership investigated the incident and determined that Defendants' use of force was consistent with TPD policy. (*Id.* ¶¶ 68, 69.)

In a written press release dated November 5, 2019, the TPD stated that "The Tempe Police Department determined, no use of force violations were committed during this incident." (*Id.* ¶ 70.)

That same day, TPD Chief of Police Sylvia Moir held a press conference addressing Plaintiff's arrest in which she stated that Defendants Kerzaya, Hanson, and Pfeifer's tasing of Plaintiff had been reviewed, and it was "determined that no policy violations occurred" during Plaintiff's arrest. (*Id.* ¶ 72.) At the end of the press conference a media member asked why Defendants had been provided additional training after Plaintiff's arrest, and Chief Moir responded, that the additional training was provided in order to reinforce the way Defendants had handled the situation—which she labeled a "successful outcome"—not to correct it. (*Id.* ¶¶ 73–74.)

In Count One, Plaintiff alleges a Fourth Amendment unlawful entry claim against Defendant Kerzaya. (*Id.* ¶¶ 38–49.) In Count Two, Plaintiff alleges Fourth Amendment excessive force claims against Defendants Kerzaya, Hanson, and Pfeiffer. (*Id.* ¶¶ 50–63.) In Count Three, Plaintiff alleges a municipal liability claim pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against the City of Tempe ("the City") for ratification/failure to discipline. (*Id.* ¶¶ 65–83.) In Count Four, Plaintiff alleges a state law assault and battery claim against Defendants Kerzaya, Hanson, Pfeifer, and the City. (*Id.* ¶¶ 84–90.) In Count Five, Plaintiff alleges a state law claim for intentional infliction of emotional distress against Defendants Kerzaya, Hanson, Pfeifer, and the City. (*Id.* ¶¶ 91–100.) In Count Six, Plaintiff alleges a state law gross negligence claim against Defendants Kerzaya, Hanson, Pfeifer, and the City. (*Id.* ¶¶ 101–105.)

The City now moves to dismiss the *Monell* claim in Count Three pursuant to Rule 12(b)(6). (Doc. 52.)

**II.    Federal Rule of Civil Procedure 12(b)(6)**

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'"

*Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)). In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted). To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**III.    *Monell* Liability-Ratification/Failure to Discipline**

    **A.    Legal Standard**

A municipality may not be sued solely because an injury was inflicted by its employees or agents. *Monell*, 436 U.S. at 691–92; *Long v. Cnty. of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir. 2006). The actions of individuals may support municipal liability only if the employees were acting pursuant to an official policy or custom of the municipality. *Botello v. Gammick*, 413 F.3d 971, 978-79 (9th Cir. 2005). A § 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless a plaintiff alleges facts showing: (1) a constitutional deprivation; (2) that the municipal defendant had a policy or custom; (3) that the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty., Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110–11 (9th Cir. 2001). Thus, the critical question in the *Monell* analysis is

whether the entity's policy or custom inflicted the harm or injury, or if the harm resulted from the independent acts of a subordinate. *See Humphries*, 562 U.S. at 36.

### B. *Monell* Analysis

#### 1. Constitutional Deprivation

##### a. Unlawful Entry

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV.  It is a basic principle that "searches and seizures inside a home without a warrant are presumptively unreasonable.'" *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) (quotation omitted); *Kirk v. Louisiana*, 536 U.S. 635, 637–639 (2002) (recognizing that the Fourth Amendment prohibits warrantless entry into a home for the purposes of making an arrest).

To justify a warrantless entry into a residence, the government must show the existence of probable cause and exigent circumstances. *Kirk*, 536 U.S. at 638.  "There are two general exceptions to the warrant requirement for home searches: exigency and emergency." *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005).  But these exceptions are applied narrowly, and a warrant is generally required to enter a person's home "unless the exigencies of the situation make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." *Brigham City*, 547 U.S. at 403 (internal quotation omitted); *see Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009); *see also Payton v. New York*, 445 U.S. 573, 590 (1980) ("[t]he Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant").

Accepting Plaintiff's allegations as true, at the time Defendant Kerzaya arrived at the scene, the purported domestic violence victim was no longer inside the apartment, and she had informed the dispatcher that there were no weapons or drugs inside the apartment. When Plaintiff opened the door for Defendant Kerzaya, Kerzaya almost immediately

entered the apartment, without a warrant, and demanded that Plaintiff put his hands behind his back.  Even though Plaintiff's three children were inside the apartment, at this stage of the proceedings, Defendant Kerzaya's brief, approximately 8-second encounter with Plaintiff before entering the apartment did not establish an exigency or emergency that would justify a warrantless entry into the apartment.  Accordingly, Plaintiff has alleged sufficient facts to state a Fourth Amendment violation at this time.

### b. Excessive Force

The use of excessive force by police officers in the course of an arrest can violate the arrestee's Fourth Amendment right to be free from unreasonable seizures.  *See White by White v. Pierce County*, 797 F.2d 812, 816 (9th Cir. 1986).  The Fourth Amendment does not prohibit the use of reasonable force.  *Tatum v. City & County of S.F.*, 441 F.3d 1090, 1095 (9th Cir. 2006).  Whether the force was excessive depends on "whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Tatum*, 441 F.3d at 1095; *Lolli v. County of Orange*, 351 F.3d 410, 415 (9th Cir. 2003).  The Court must balance the nature and quality of the intrusion against the countervailing governmental interests at stake.  *Graham*, 490 U.S. at 396; *Lolli*, 351 F.3d at 415.  Moreover,

> [t]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . . "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment.

*Graham*, 490 U.S. at 396 (citations omitted).  "Whether a particular use of force was 'objectively reasonable' depends on several factors, including the severity of the crime that prompted the use of force, the threat posed by a suspect to the police or to others, and whether the suspect was resisting arrest."  *Tatum*, 441 F.3d at 1095.

Here, Plaintiff alleges that Defendants Kerzaya, Hanson, and Pfeifer tased him while he was unarmed and holding a baby and continued to tase him even after he was

- 6 -

already on the ground and motionless. (Doc. 13 ¶¶ 35, 37.) Accepting Plaintiff's allegations as true, he has sufficiently alleged that Defendants' use of force when Plaintiff did not pose any threat and after Plaintiff was subdued was unreasonable.

Accordingly, Plaintiff has pleaded sufficient facts to satisfy the first prong of the *Monell* analysis at this time.

### 2.     Policy, Practice, or Custom

For purposes of municipal liability, a "policy" is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fogel v. Collins*, 531 F.3d 824, 834 (9th Cir. 2008); *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006). A policy can be one of action or inaction. *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

A custom is a widespread and longstanding practice that "constitutes the standard operating procedure of the local government entity." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) (quotation omitted). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (citations omitted). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Com'rs v. Brown*, 520 U.S. 397, 409 (1997)).

However, "[a] municipality also can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions." *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999). "To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Id.* at 1239 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). But "[a] mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). The policymaker must have knowledge of the

1  constitutional violation and must make a "conscious, affirmative choice" to ratify the
2  conduct at issue. *Id*. "In other words, in order for there to be ratification, there must be
3  'something more' than a single failure to discipline or the fact that a policymaker concluded
4  that the defendant officer's actions were in keeping with the applicable policies and
5  procedures." *Garcia v. City of Imperial*, No. 08cv2357 BTM(PCL), 2010 WL 3911457 at
6  *10 (S.D. Cal 2010); *see also Kanae v. Hodson*, 294 F. Supp. 2d 1179, 1191 (D. Haw.
7  2003) (finding a plaintiff must "present 'something more' than a failure to discipline" to
8  survive summary judgment).

9        Here, Plaintiff alleges that the City, through Chief Moir's statements during the
10 press conference regarding the outcome of the investigation into Plaintiff's arrest, ratified
11 Defendants' conduct. Accepting Plaintiff's allegations in the Third Amended Complaint
12 as true, Chief Moir was aware of Defendants' alleged actions that took place during
13 Plaintiff's arrest, and after an investigation, TPD determined that said conduct did not
14 violate TPD policy. As discussed above, it is well-settled that without "something more,"
15 a City's failure to discipline an officer, or its finding that an officer's conduct did not violate
16 policy, does not amount to ratification. *Lytle*, 382 F.3d at 987; *Sheehan v. City & Cty. of
17 San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd on other grounds*, 135 S. Ct.
18 1765 (2015) ("Ratification, however, generally requires more than acquiescence"); *see
19 Gillette v. Delmore*, 979 F.3d 1342, 1348 (9th Cir. 1992) ("To hold cities liable under
20 section 1983 whenever policymakers fail to overrule the unconstitutional discretionary acts
21 of subordinates would simply smuggle respondeat superior liability into section 1983 law
22 [creating an] end run around *Monell*"); *see also Santiago v. Fenton*, 891 F.2d 373, 382 (1st
23 Cir. 1989) ("[W]e cannot hold that the failure of a police department to discipline in a
24 specific instance is an adequate basis for municipal liability under *Monell*"). But here,
25 Plaintiff sufficiently pleaded "something more" to state a ratification claim in the Second
26 Amended Complaint when he alleged that Chief Moir ratified Defendants' conduct when
27 she stated that Defendants were sent to additional training in order to reinforce—and not
28 to correct—the way Defendants had handled Plaintiff's arrest, which she referred to as a

1  "successful outcome."  For purposes of a motion to dismiss, Plaintiff's presented enough
2  facts to show that Chief Moir adopted Defendants' conduct as official policy when she
3  referred to it as a "successful conduct" and signaled that such behavior should be reinforced
4  through departmental training.  Moreover, Plaintiff has pleaded sufficient facts to show
5  that a policy of ratifying instances of unlawful entry and excessive force by officers
6  amounts to deliberate indifference and that such a policy was the moving force behind his
7  injury.

8  Accordingly, the City's Motion to Dismiss will be denied.

9  **IT IS ORDERED** that the reference to the Magistrate Judge is **withdrawn** as to
10 Defendant City of Tempe's Motion to Dismiss (Doc. 52), and the Motion is **denied**.

11 Dated this 14th day of January, 2022.

James A. Teilborg
Senior United States District Judge